[Cite as *State v. McClure*, 2015-Ohio-5203.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

CLERMONT COUNTY


| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| Plaintiff-Appellee, | : | CASE NO. CA2015-06-045 |
| | : | O P I N I O N |
| - vs - | | 12/14/2015 |
| | : | |
| JOEL VINCENT MCCLURE, | : | |
| Defendant-Appellant. | : | |


CRIMINAL APPEAL FROM CLERMONT COUNTY COURT OF COMMON PLEAS
Case No. 2015 CR 001918


D. Vincent Faris, Clermont County Prosecuting Attorney, Nicholas Horton, 76 South Riverside Drive, 2nd Floor, Batavia, Ohio 45103, for plaintiff-appellee

Christine D. Tailer, P.O. Box 14, Georgetown, Ohio 45121, for defendant-appellant


**PIPER, P.J.**

{¶ 1} Defendant-appellant, Joel McClure, appeals his sentence and a decision of the Clermont County Court of Common Pleas to accept his waiver of a conflict of interest.

{¶ 2} McClure, who had previously been convicted of aggravated robbery, entered a salon and demanded that the employee give him cash from the register. McClure brandished a knife during the robbery, and absconded with $600 cash. McClure was later charged with aggravated robbery and a repeat offender specification.

{¶ 3}   McClure entered into plea negotiations with the state, and agreed to plead guilty to one count of aggravated robbery in return for the state dismissing the repeat offender specification.  During the plea negotiations, McClure's counsel was informed that he had a potential conflict of interest in that another member of the public defender's office represented an individual in another matter, and that person was identified as a potential witness against McClure.  McClure's counsel and another member of the public defender's office discussed the issue fully with McClure and informed McClure that he could obtain different counsel.  McClure's counsel gave McClure the weekend to consider the issue. McClure informed his counsel that he wanted to waive the conflict and proceed with the plea after acknowledging that his attorney discussed the nature of the conflict, its potential consequences, and McClure's options.

{¶ 4}   During the plea hearing, the trial court and the parties discussed the conflict of interest issue in full, with the trial court personally addressing McClure regarding the conflict and his options.  The trial court offered several times to appoint different counsel for McClure, and further explained the impact of waiving the conflict and proceeding with the guilty plea. However, McClure was steadfast in his desire to waive the conflict, and in his desire to accept the state's offer of a plea agreement.

{¶ 5}   The trial court held a sentencing hearing after ordering a presentence investigation, and sentenced McClure to ten years in prison.  McClure now appeals the trial court's decision to accept his waiver of his counsel's conflict of interest as well as his sentence, raising the following assignments of error.

{¶ 6}   Assignment of Error No. 1:

{¶ 7}   THE TRIAL COURT ERRED WHEN, EVEN THOUGH IT DID DISCUSS THE EFFECT OF A WAIVER OF CONFLICT OF INTEREST WITH APPELLANT, IT DID NOT INQUIRE AS TO THE NATURE OF THE ACTUAL CONFLICT.

{¶ 8} McClure argues in his first assignment of error that the trial court erred in accepting his waiver of his trial counsel's conflict of interest without first inquiring into the conflict.

{¶ 9} "Where a trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime, the trial court has an affirmative duty to inquire whether a conflict of interest actually exists." *State v. Gillard*, 64 Ohio St.3d 304, 311(1992). A trial court has substantial latitude in determining the existence and waiver of an actual or potential conflict of interest. *State v. Keenan*, 81 Ohio St.3d 133 (1998).

{¶ 10} After reviewing the record, we find that the trial court inquired into whether a conflict of interest actually existed and determined a conflict did exist. At the beginning of the plea hearing, McClure's trial counsel informed the court that it had "identified a conflict between a witness in this case and Mr. McClure. Specifically another attorney in our office represents – represents someone who was approached to be a witness." McClure's attorney then told the trial court that he and another member of his office "laid out the conflict for [McClure], what it means at trial, offered to withdraw or we could proceed today to a plea with his consent and his waiver of that conflict." After giving McClure the weekend to consider the issue, McClure "indicated that he wanted to go forward with the plea * * * he was willing to waive the conflict" and executed the plea agreement form with his counsel.

{¶ 11} The trial court confirmed with McClure that his counsel's representations regarding the conflict were accurate, and then personally addressed McClure regarding the possibility of a conflict and its impact. During his direct conversation with McClure, the trial court stated,

> This is a big matter. I mean you've got a very - - very serious
> charge, a felony of the first degree, and you can be sentenced to
> what you're pleading to today to up to 11 years in prison, which

- 3 -

means if – if you would rather me appoint someone else, and - - and unless you waive the conflict I'm going to appoint someone else. Then I will - - then I'll appoint someone. So I'll - - we have a lot of attorneys in Clermont County, and I would make sure you have one that I feel is very competent to represent you. So I will do that whether you want to go to trial or whether you want to plea. So, in other words, I'm – you—you are entitled to counsel that does not have any conflict, and you're entitled to effective representation. So if - - do you understand I'm willing to do that for you?

{¶ 12} Once McClure indicated his understanding, the trial court again offered to appoint different counsel. The trial court also assured McClure that appointing a different attorney would not cause delay, and that the appointment would occur that day. Still, McClure expressed his desire to move forward and waive the conflict of interest. The trial court then inquired as to whether McClure felt that his trial counsel had "fully disclosed the nature" of the conflict and that McClure understood the conflict and impact of waiver fully. McClure answered that he fully understood, and affirmed his understanding multiple times.

{¶ 13} McClure asserts that despite his indication during the plea hearing that he waived the conflict, the waiver was invalid because the trial court, itself, did not have a complete understanding of the conflict. We disagree. During the same plea hearing, and after the trial court inquired into the conflict issue and whether McClure wished to waive the conflict, the trial court once again addressed McClure to further develop the issue. The trial court stated, "you understand there's a witness who if - - if the case went to trial would - - would - - their office is represented would testify presumably against you." The trial court directly referred to the representation by the public defender's office of the potential witness as a conflict, and asked once more if McClure wished to waive the conflict and proceed with his trial counsel representing him during the plea process.

{¶ 14} The trial court's discussion of the duel representation as a conflict demonstrates that the trial court made a valid inquiry into the possibility of a conflict of interest and what it

- 4 -

entailed as required by the Ohio Supreme Court in *Gillard*. While McClure argues that the trial court had no "knowledge as to the extent of the conflict or whether or not that conflict could even be waived," the record clearly indicates that the court inquired into the issue enough to determine that a conflict did in fact exist, and that the conflict was based upon McClure's trial counsel working in the same office as an attorney who represented a potential state's witness.

{¶ 15} Although the trial court did not obtain specific details as to the identity of the witness or the substance of that witness' testimony, the facts of the case were relatively simple and straightforward, and McClure never denied having committed the crime. In fact, McClure chose to plead guilty in return for the state dismissing the repeat offender specification, and there is absolutely no indication in the record that McClure's acceptance of the state's plea offer was in any way impacted by the public defender's office representing multiple parties.

{¶ 16} We find the case sub judice distinguishable from *Gillard* in which the Ohio Supreme Court set forth the rule of law regarding the trial court's duty to inquire into the possibility of a conflict. In *Gillard*, the same attorney represented Gillard and his brother both of whom were suspected of committing two murders and attempted murder. While Gillard went to trial on the charges against him, Gillard's brother pled no contest to a reduced charge. Gillard's brother appeared at trial as a defense witness, and the state raised the issue of a possible conflict of interest. In so doing, the state noted that it was still investigating the possibility that the brother was involved in the homicides and attempted murder separate from the charge to which he pled no contest. Gilliard's attorney did not believe a conflict existed, and the trial court only addressed the brother/witness regarding his right to have separate counsel and his right to remain silent given that the investigation against him was ongoing. However, the trial court did not address the issue with Gillard, nor

inquire into what impact the possible conflict would have on him.

{¶ 17} The Ohio Supreme Court remanded the case to the trial court to determine whether there was a conflict of interest created by Gillard's counsel representing both Gillard and his brother. In so doing, the court held as noted above that a trial court has an affirmative duty to inquire whether a conflict of interest actually exists when the trial court knows or reasonably should know of an attorney's possible conflict of interest in the representation of a person charged with a crime.

{¶ 18} The record is clear that the trial court in the case sub judice complied with the mandate set forth in *Gillard*. As previously stated, the trial court inquired into the possibility of a conflict, and determined that there was one. Unlike the attorney in *Gilliard*, McClure's attorney never denied there was a potential conflict of interest. The trial court directly indicated that the conflict was that two attorneys from the same public defender's office represented both McClure and a potential state's witness. Because of the conflict, the trial court gave McClure multiple opportunities to have different counsel appointed and ensured that McClure gave a valid waiver of the right to have conflict-free representation. *See State v. Myles*, 3d Dist. Marion No. 9-2000-93, 2001 WL 542115, (May 23, 2001) (finding trial court made sufficient inquiry where the trial court explained to the appellant that there was a conflict of interest, what the conflict could potentially mean, and that appellant had the right to have different counsel represented).

{¶ 19} The key difference therefore between *Gillard* and what occurred here is that the trial court personally addressed McClure, identified the conflict, explained in detail the ability to have different counsel appointed, and then accepted a valid waiver of the conflict from McClure. As such, the trial court fulfilled its duty as set forth in *Gillard*.

{¶ 20} After reviewing the record, we find that the trial court properly inquired into the nature of the conflict of interest, and properly accepted McClure's waiver of that conflict.

McClure's first assignment of error is therefore overruled.

{¶ 21} Assignment of Error No. 2:

{¶ 22} THE TRIAL COURT ERRED WHEN IT IMPOSED A SENTENCE THAT WAS CONTRARY TO LAW BY SENTENCING APPELLANT TO A MANDATORY STATED PRISON TERM OF TEN YEARS.

{¶ 23} McClure argues in his second assignment of error that the trial court erred in imposing a ten-year sentence.

{¶ 24} R.C. 2953.08(G)(2) shall govern all felony sentences. *State v. Crawford*, 12th Dist. Clermont No. CA2012-12-088, 2013-Ohio-3315, ¶ 6. Pursuant to R.C. 2953.08(G)(2), when hearing an appeal of a trial court's felony sentencing decision, "the appellate court may increase, reduce, or otherwise modify a sentence that is appealed under this section or may vacate the sentence and remand the matter to the sentencing court for resentencing." However, as explicitly stated in R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion."

{¶ 25} Instead, an appellate court may only take action authorized by R.C. 2953.08(G)(2) if the court "clearly and convincingly finds" that the sentence is contrary to law. A sentence is not clearly and convincingly contrary to law where the trial court considers the purposes and principles of R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentences appellant within the permissible statutory range. *State v. Elliott*, 12th Dist. Clermont No. CA2009-03-020, 2009-Ohio-5926, ¶ 10.

{¶ 26} After reviewing the record, the trial court's sentence is not contrary to law. The trial court discussed the factors related to the principles and purposes of Ohio's sentencing statutes at the sentencing hearing, and expressly stated in its entry that it had considered the purposes and principles of sentencing according to R.C. 2929.11 and had balanced the seriousness and recidivism factors within R.C. 2929.12.

{¶ 27} While the trial court did not expressly cite R.C. 2929.11 and R.C. 2929.12 during the sentencing hearing, its discussion of the individual factors found within those statutes indicates that it gave due consideration to the purposes and principles of sentencing, as well as the seriousness and recidivism factors. This is especially true where the trial court also included the specific citations to R.C. 2929.11 and R.C. 2929.12 in its sentencing entry. *See State v. Back*, 2d Dist. Clark No. 2013-CA-62, 2014-Ohio-1656, ¶ 14 (affirming a sentence where the trial court failed to cite R.C. 2929.11 or 2929.12 during the sentencing hearing but stated in its judgment entry of conviction that it had considered the principles and purposes of sentencing pursuant to R.C. 2929.11 and balanced the seriousness and recidivism factors pursuant to R.C. 2929.12); and *State v. Lancaster*, 12th Dist. Butler No. CA2007-03-075, 2008-Ohio-1665 (affirming a sentence where the trial court did not state at the sentencing hearing that the court considered R.C. 2929.11 or R.C. 2929.12 specifically, but stated its consideration of both statutes in its judgment entry of conviction). Based on the record, it is clear that the trial court gave the proper consideration to the purposes and principles of sentencing as well as the seriousness and recidivism factors as required by Ohio's sentencing statutes.

{¶ 28} McClure was convicted of aggravated robbery in violation of R.C. 2911.01(A)(1), which is a first-degree felony. According to R.C. 2929.14(A)(1), "For a felony of the first degree, the prison term shall be three, four, five, six, seven, eight, nine, ten, or eleven years." As such, McClure's ten-year sentence was within the sentencing range for a first-degree felony.

{¶ 29} After reviewing the record, we find that McClure's sentence was not clearly and convincingly contrary to law where the trial court considered the purposes and principles of sentencing according to R.C. 2929.11, as well as the seriousness and recidivism factors listed in R.C. 2929.12, and sentenced McClure within the permissible statutory range. As

such, McClure's sentence was not contrary to law, and his second assignment of error is overruled.

{¶ 30} Judgment affirmed.

S. POWELL, J., concurs.

RINGLAND, J., dissents.

**RINGLAND, J., dissenting.**

{¶ 31} I respectfully dissent from the majority's decision. I would find that the trial court failed to adequately inquire about the conflict of interest in order to ensure that McClure's waiver was voluntary and intelligent.

{¶ 32} As stated above, when a trial court becomes aware of a potential conflict of interest, the court has an affirmative duty to inquire about the potential conflict. *Gillard* at 311. If the conflict of interest exists, the trial court must alert the defendant to the possible consequences of the conflict and obtain a voluntary and intelligent waiver of such a conflict. *State v. Garcia*, 6th Dist. Huron No. H-06-003, 2007-Ohio-1525, at ¶ 16; *State v. Crosky*, 10th Dist. Franklin No. 06AP-816, 2007-Ohio-6533, ¶ 17.

{¶ 33} The court's duty to inquire into the specifics of the conflict is imperative where some conflicts of interest cannot be waived. The court in *State v. Johnson*, 185 Ohio App.3d 654, 2010-Ohio-315, ¶ 7 (3d Dist.), recognized that "if the representation of the informant was related to matters that led to the current charges against the defendant, there might be a conflict significant enough to override even the most thorough of admonishments."

{¶ 34} In the present case, the trial court presumed that the witness would testify against McClure, but there is nothing to indicate the extent of that potential testimony and the witness' significance to the state's case against McClure. While the trial court asked McClure

whether he fully understood the conflict and McClure affirmed his understanding, the trial court had no way of knowing whether his understanding was accurate without itself knowing the exact circumstances of the conflict. McClure's counsel stated that he and another member of the office fully described the conflict to McClure, but the trial court cannot be sure that is true without further inquiry into the circumstances of the conflict.

{¶ 35} Furthermore, the Ohio Supreme Court has recognized that the Ohio Rules of Professional Conduct forbid the waiver of conflicts of interest in some instances. *Columbus Bar Assn. v. Ross*, 107 Ohio St.3d 354, 2006-Ohio-5. This is true even where the attorney obtains a written waiver of the conflict, something which is absent from the record in the present case.[1] Prof.Cond.R. 1.7(c)(2) provides that an attorney shall not accept or continue representation if "the representation would involve the assertion of a claim by one client against another client represented by the lawyer in the same proceeding."

{¶ 36} While the Supreme Court exercises exclusive jurisdiction over admission to the practice of law and discipline of persons so admitted, a trial court retains the "'authority and duty to see to the ethical conduct of attorneys in proceedings before it * * * [and] [u]pon proper grounds it can disqualify an attorney.'" *Royal Indemn. Co. v. J.C. Penney Co.*, 27 Ohio St.3d 31, 34 (1986), quoting *Hahn v. Boeing Co.*, 95 Wash.2d 28, 34 (1980). As explained further in *Mentor Lagoons, Inc. v. Rubin*, 31 Ohio St.3d 256, 259-260 (1987):

> This includes the inherent authority of dismissal or disqualification from a case if an attorney cannot, or will not, comply with the Code of Professional Responsibility when representing a client. This power is distinct from the exclusive authority of the Supreme Court of Ohio over attorney disciplinary proceedings, and does not conflict with such power. Indeed we hasten to approve and encourage courts throughout this state in their efforts to halt unprofessional conduct and meet their responsibilities in reporting violations of the Code.

---

1. A review of the record does not indicate that counsel for McClure obtained informed consent, confirmed in writing, as required by Prof.Cond.R. 1.7(b)(2).

(Internal citations omitted.)

**{¶ 37}** Without inquiring into the full extent and nature of the conflict between the witness and McClure, the trial court could not be sure that counsel's continued representation of McClure was not subject to Prof.Cond.R. 1.7(c)(2) and ineligible for waiver on ethical grounds.

**{¶ 38}** Thus, I would find that the trial court could not obtain a voluntary and intelligent waiver of the conflict if the court itself was not fully aware of the extent of conflict, nor whether the conflict was eligible for waiver.

**{¶ 39}** Accordingly, I respectfully dissent from the majority's decision and would find that the trial court erred in failing to inquire further into the conflict of interest.